## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **AERO WING EQUIPMENT, LLC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Case No.  5:20-CV-01103-R |
| | ) | |
| | ) | |
| **EXECUTIVE AIR, LTD., and** | ) | |
| **JOHN ACKIE** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Before the Court is Defendants Executive Air, LTD. (Executive Air) and John Ackie's (Ackie) motion to dismiss for lack of personal jurisdiction, or, in the alternative, change of venue based on a mandatory forum-selection clause, Doc. No. 12. Aero Wing Equipment, LLC. (Plaintiff) responded in opposition, Doc. No. 16, and Defendants then filed a reply in support of their motion, Doc. No. 17. The Court **DENIES** Defendants' motion to dismiss based on a lack of personal jurisdiction and **GRANTS** Defendants' motion to change venue to the District of Hawaii based on a mandatory forum-selection provision in the relevant contract.

## I. Background

Plaintiff is a lessor of aircraft headquartered and operated in Oklahoma. Executive Air is a charter flight service for which Ackie serves as president, owner, and chief pilot. Doc. 12 at 7. Executive Air primarily operates in the Caribbean and is headquartered in Barbados. *Id*. Ackie is a citizen of St. Vincent and Grenadine Islands and a resident of

Florida. *Id*. Both parties agree that this is a simple contract dispute. *Id*. at 4 and Doc. 16 at 5. At issue is a lease agreement for a certain Cessna 208 Caravan aircraft (aircraft) entered between Plaintiff and Defendants on November 1 or 15,[1] 2015, and a follow-up personal guaranty signed by Plaintiff and Ackie on October 25, 2016. Doc. 12 at 11. The parties do not dispute that the contracts were freely entered into or allege any species of fraud.

The negotiations over the lease began in 2015 after Ackie saw an advertisement for the aircraft in an online trade publication. *Id*. at 7. Ackie, acting on behalf of Executive Air, initiated contact with Plaintiff and began negotiations to lease the aircraft via phone calls and emails. *Id*. at 8. After several preliminary drafts, Plaintiff and Executive Air agreed to a final document. Plaintiff signed the lease in Oklahoma and Ackie signed the lease on behalf of Executive Air in Barbados. *Id*. These events took place sometime in November. *Id*. Before the signing of the deal, Executive Air sent a mechanic to inspect the aircraft while it was still in Shawnee, Oklahoma. Doc. 16 at 6. Executive Air again inspected the aircraft again upon delivery in Miami. Doc. 12 at 9.

For approximately 11 months, Executive Air made payments for its lease into a bank account held in Oklahoma and used the aircraft primarily from their base of operations in Barbados. Doc. 12 at 6, 8. Plaintiff claims it supported these operations by providing ". . . parts and equipment from its base of operations in Shawnee, Oklahoma." Doc. 16 at 7. Executive Air also provided at least monthly updates to Plaintiff via phone or email during

---

[1] The two parties provide conflicting dates in their briefs. *See* Doc. 16 at 5 and Doc. 12 at 9.

the lease period. *Id.* Executive Air made these calls to Plaintiff's Oklahoma base of operations. *Id.*

Although the lease was to last two years after signing, by February 7, 2017, Executive Air ceased making payments, and Plaintiff demanded the grounding and return of the aircraft. *Id.* at 8–9. The parties dispute whether this was an agreed-to disposition. Regardless, Plaintiff recovered the aircraft in April 2017. Plaintiff then initiated this breach of contract suit against Executive Air for breach of the lease and Ackie for breach of the personal guaranty. Doc. 1 at 6–8.

## II. <u>Personal Jurisdiction</u>

### a. <u>Standard of Decision</u>

Plaintiff "bears the burden of establishing personal jurisdiction over defendant." *Intercon, Inc. v. Bell Atl. Internet Sol.*, 205 F.3d 1244, 1247 (10th Cir. 2000); *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). Where, as here, the issue is presented for decision without an evidentiary hearing on the basis of affidavits and other written materials, Plaintiff "need only make a prima facie showing that jurisdiction exists." *Intercon*, 205 F.3d at 1247 (internal quotation omitted); *see Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010); *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056–57 (10th Cir. 2008). At this stage, the Court must accept uncontroverted factual allegations as true and resolve all factual disputes in Plaintiff's favor. *See Employers*, 618 F.3d at 1159; *AST Sports*, 514 F.3d at 1056; *Intercon*, 205 F.3d at 1247. To defeat Plaintiff's jurisdictional showing, Defendants must present a "compelling case" that other considerations render jurisdiction unreasonable. *See OMI*

*Holdings*, 149 F.3d at 1091; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985); *AST Sports*, 514 F.3d at 1059.

To establish personal jurisdiction over a nonresident defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Employers*, 618 F.3d at 1159 (internal quotation omitted). Under Oklahoma law, the personal jurisdiction inquiry is simply a federal due process analysis. *Intercon*, 205 F.3d at 1247; *Rambo v. American S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988). The familiar due process standard requires "minimum contacts" between the defendant and the forum state and a finding that the exercise of jurisdiction comports with "'fair play and substantial justice.'" *See Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980); *Intercon*, 205 F.3d at 1247.

### b. <u>Minimum Contacts</u>

#### 1. <u>Legal Standard</u>

The minimum contacts standard may be satisfied by showing general or specific personal jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Employers*, 618 F.3d at 1159–60; *AST Sports*, 514 F.3d at 1058; *OMI Holdings*, 149 F.3d at 1091. General jurisdiction refers to a court's power to hear claims against a nonresident defendant whose "affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum State." *See Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014) (quotation omitted). General personal jurisdiction

exists where the defendant has maintained "continuous and systematic general business contacts" with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *Employers*, 618 F.3d at 1160 n.5*; OMI Holdings*, 149 F.3d at 1091. In this case, Defendants contend this type of personal jurisdiction is lacking. Plaintiff does not dispute this contention but, instead, relies on the existence of specific jurisdiction.

Specific personal jurisdiction exists where a plaintiff shows that "a 'defendant has "purposefully directed" his activities at residents of the forum . . . and the litigation results from alleged injuries that "arise out of or relate to" those activities.'" *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996) (quoting *Burger King*, 471 U.S. at 472); *see Intercon*, 205 F.3d at 1247; *OMI Holdings*, 149 F.3d at 1090–91. To satisfy the first prong, a plaintiff must demonstrate that a defendant " 'purposefully directed' their activities at the forum state . . . or 'purposefully availed' [themselves] of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). Purposeful availment generally requires affirmative conduct by the nonresident defendant that creates a substantial connection to the state; unilateral activity of others is insufficient. *See Burger King,* 471 U.S. at 475; *see also Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296–97 (10th Cir. 2004); *OMI Holdings*, 149 F.3d at 1092.

As noted by the Court of Appeals, "[t]he application of [due process] standards to contracts made between citizens of different states is not without difficulty" but is guided by the Supreme Court's opinion in *Burger King*. *See Rainbow Travel Serv., Inc. v. Hilton Hotels Corp.*, 896 F.2d 1233, 1237 (10th Cir. 1990). The Supreme Court in *Burger King*

"rejected the notion that personal jurisdiction might turn on 'mechanical' tests . . . or on 'conceptualistic . . . theories of the place of contracting or of performance . . . .'" *Burger King*, 471 U.S. at 478 (citations omitted). "In order to assess whether minimum contacts occurred in a contract case, we look at 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *AST Sports*, 514 F.3d at 1058 (quoting *Burger King*, 471 U.S. at 479)). "A contract alone does not subject a nonresident defendant to the jurisdiction of the subject forum," but additional facts that demonstrate the pursuit of an ongoing business relationship will support jurisdiction. *See id*. at 1059.

### 2. **Analysis**

#### i. **Executive Air**

In this case, Plaintiff's breach of contract claim arises from an agreement forged over several months of negotiation with a company known to be based in Oklahoma and Executive Air inspected the aircraft in Oklahoma. Executive Air makes much of the fact that it is not a resident of Oklahoma, and that it does not have operations in the State. However, this is not the standard. As stated above, although the existence of a contract is not enough to justify haling a defendant into a jurisdiction, the existence of an ongoing business relationship is. *Id.*

Here, Plaintiff alleges that Executive Air during the lease period sent payments to the Plaintiff's Oklahoma bank account, made regular calls and other communications to Plaintiff's employees and operations in Oklahoma, had an agent inspect the aircraft in Oklahoma, and received support from Plaintiff's Oklahoma location. These are the very

type of factors the Supreme Court envisioned binding a defendant to a jurisdiction when it rejected a "mechanical" test requiring a defendant to be physically located in a jurisdiction. *Burger King*, 471 U.S. at 478.

### ii. __Ackie__

Whether the Court has jurisdiction over Ackie in his personal capacity is more complicated, as most of his conduct resulted from his position as an officer of Executive Air, rather than as an individual. However, Ackie is not just an officer, but the owner of Executive Air who signed a personal guaranty for Executive Air's lease. He is aware of Plaintiff's Oklahoma base of operations and the terms of the lease he signed on Executive Air's behalf, which mandated that Ackie's company make payments to an Oklahoma bank account and provide updates regularly to Plaintiff's employees in Oklahoma.

"Signing a personal guaranty for a[n] [Oklahoma] business in which one has an economic interest is the sort of conduct and connection with the forum State that makes it reasonable to anticipate being haled into court there when the underlying contract is breached." *Kirby-Smith Mach., Inc. v. Holmgren Enterprises, Inc.*, No. CIV-13-374-HE, 2013 WL 6198200, at *3 (W.D. Okla. Nov. 27, 2013) (internal quotations omitted). *See First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc*., 820 F.2d 1127, 1130–31 (10th Cir.1987). "This is not a case in which the defendant's only contacts with the forum resulted from 'the mere unilateral activity' of the plaintiff." *Kirby-Smith Mach., Inc*, No. CIV-13-374-HE, 2013 WL 6198200, at *3. The Court concludes that Ackie had sufficient minimum contacts with the state to support an exercise of personal jurisdiction.

Taking the alleged facts as true, the Court is satisfied that the Plaintiff has made a minimally sufficient showing that the Defendants intentionally directed their activities at the State of Oklahoma and purposefully availed themselves of the privilege of conducting business in Oklahoma. Plaintiff has shown the lease, the negotiations and communications concerning it, and the parties' ongoing relationship regarding the aircraft created a meaningful connection to Oklahoma that binds Executive Air to this jurisdiction. It has additionally demonstrated that Ackie's signing of the personal guaranty for Executive Air's lease has bound him to this jurisdiction through the underlying lease agreement and the associated ongoing business relationship that lease required.

### c. **Substantial Justice**

"[W]here a defendant who purposefully has directed activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477; *see also Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005). Relevant factors include:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Pro Axess*, 428 F.3d at 1279–80; *Intercon*, 205 F.3d at 1249. Additionally, the Tenth Circuit has found the analysis should include a sliding scale, looking at the strength of the ties to a jurisdiction when deciding whether the jurisdiction would be unreasonable, stating:

The analyses of minimum contacts and reasonableness are complementary, such that "the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]".

*Pro Axess*, 428 F.3d at 1280 (quoting *OMI Holdings*, 149 F.3d at 1092.

## 1. __The Burden on the Defendant__

"[T]he burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction . . . . When the defendant is from another country, this concern is heightened, and great care and reserve should be exercised before personal jurisdiction is exercised over the defendant." *OMI*, 149 F.3d at 1096 (quotations omitted). However, "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Burger King*, 471 U.S. at 474 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

In this case, Defendants are based in Barbados or individually live in Florida—a substantial distance from Oklahoma. However, Executive Air and Ackie have demonstrated the capacity to journey throughout the United States, including sending an employee to Oklahoma for an aircraft inspection and making trips to Miami and North Carolina. Doc. 12 at 7–8. Executive Air, as a charter airline, conducts economic activity around the United States and the Caribbean. As Executive Air's president, owner, and chief pilot, Ackie travels frequently in his business activities on behalf of Executive Air. Finally, there is no allegation of a language barrier between this officer of a foreign corporation,

9

Ackie, and the United States. Accordingly, forcing Defendants to litigate in Oklahoma is not "gravely difficult and inconvenient," especially considering their agreement to litigate in Hawaiian courts in Section 30 of the lease agreement. *Id.* at 478.

### 2.  The Forum State's Interest in Resolving the Dispute

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI*, 149 F.3d at 1096. "The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's law." *Id.* Here, this factor favors Oklahoma's exercise of jurisdiction over Defendants. Plaintiff is an Oklahoma corporation with its principal place of business being in Oklahoma. The State, and therefore this Court, has an interest in ensuring its corporations have an effective forum to address legal disputes, including this one lodged against Defendants.

### 3.  Plaintiff's Interest in Receiving Convenient and Effective Relief

This factor

hinges on whether the Plaintiff may receive convenient and effective relief in another forum. This factor may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit.

*Id.* at 1097. Although Hawaiian law governs this contract dispute, the Western District of Oklahoma would provide a more effective venue to engage in the legal analysis of that law than a court in Barbados—a non-American jurisdiction. Asking Plaintiff to travel to Barbados to fight its U.S. law claims in a foreign legal system likely would be a barrier to Plaintiff's convenient and effective relief.

### 4. Interstate Judicial System's Interest in Obtaining an Efficient Resolution

This factor asks: "whether the forum state is the most efficient place to litigate the dispute." *Id*. "Key to this inquiry are the location[s] of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Id*. (citations omitted). In this case, most of the negotiations took place digitally or over the phone, making Oklahoma an efficient forum. An inspection took place in Oklahoma and Plaintiff has claimed that they provided support services for Defendants from Oklahoma. However, Defendants are correct to point out most of their operations, including negotiations, took place in the Caribbean and Florida. This factor as cuts both ways, making Oklahoma as efficient as any other forum in handling this international contract dispute.

### 5. States' Interest in Furthering Fundamental Substantive Social Policies

The fifth factor of the reasonableness inquiry "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations." *Id*. "[G]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Id*. at 1097–98. The Court must examine whether its exercise of personal jurisdiction over Defendants would interfere with Barbados' sovereignty. Relevant facts include "whether one of the parties is a citizen of the foreign nation, whether the foreign nation's law governs the dispute, and whether the foreign nation's citizen chose to conduct business with a forum resident." *Id*. at 1098 (citations omitted).

11

Executive Air is a Barbadian company and Ackie is a resident of Florida and citizen of St. Vincent and Grenadine Islands. However, the contract in dispute is governed by Hawaiian law, not Oklahoman, Floridian, Barbadian, or St. Vincent and Grenadine Islander laws. Because neither Oklahoma's nor a foreign nation's laws are in dispute, the Court sees no infringement on a foreign nation's sovereignty by taking jurisdiction over this case.

In conclusion, the factors weigh in Plaintiff's favor. Defendants cannot establish a "compelling case" that the exercise of jurisdiction by a federal court in Oklahoma would be unreasonable. *Burger King*, 471 U.S. at 477. The Court concludes that haling Defendants into Oklahoma federal court would not offend traditional notions of fair play and substantial justice. The Court is satisfied that both prongs of the federal due process analysis are satisfied. The Defendants' motion to dismiss for a lack of personal jurisdiction is therefore denied and the Court will move on to address their motion to dismiss or change venue to the District of Hawaii based the forum-selection clause of the lease.

## III. Forum Selection Clause

### a. Statement of Law

When a valid forum-selection clause exists, "a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). A court should only decline to transfer a case in that situation if "extraordinary circumstances unrelated to the convenience of the parties" exist. *Id*. Traditional interests such as the plaintiff's choice of forum or the parties' private interests are given no weight. *See Kelvion, Inc. v. PetroChina Canada Ltd.*, 918 F.3d 1088, 1091 (10th Cir. 2019). The mechanism for transfer is Title 28 U.S.C. § 1404(a),

12

which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

## b. <u>Analysis</u>

Under Tenth Circuit precedent, "forum-selection clauses are frequently classified as either mandatory or permissive*." Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997). "Mandatory forum-selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum." *Id*. (Modified). "In contrast, permissive forum-selection clauses authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." *Id*. (quotation marks omitted). In applying this distinction, the Tenth Circuit follows what it has described as the "majority rule":

> Where venue is specified in a forum-selection clause with mandatory or obligatory language, the clause will be enforced; where only jurisdiction is specified in a forum-selection clause, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive.

*K & V Scientific Co. v. BMW*, 314 F.3d 494, 499–500 (10th Cir. 2002) (Modified).

The primary focus of Defendants' motion is Section 30 of the Lease Agreement, which states:

> This *Agreement* and the rights of the parties hereto shall in every respect be governed by, and construed, interpreted and applied in accordance with the substantive laws of the State of **Hawaii**, United States of America, without regard to the principles of conflicts of law thereunder. **In absence of U.S. Federal jurisdiction or Barbados jurisdiction being exercised, proper jurisdiction regarding any question related to this Agreement shall be the State Court for Maui County, State of Hawaii, with proper venue**

13

> **therein being exclusively in Maui. Should U.S. federal jurisdiction be exercised, proper jurisdiction shall be in the Federal District Court for the State of Hawaii, with proper venue therein being exclusively in Honolulu**

Doc. 1-1 at 18-19 (emphasis in original).

Here, the Court finds Section 30 of the lease agreement is not ambiguous, though it is unartfully drafted. Although it is true that Section 30 offers the ability for either party to bring a claim in federal court or Barbadian court, once a party to the contract has chosen federal jurisdiction, the case "**shall be in the Federal District Court for the State of Hawaii, with proper venue therein being exclusively in Honolulu**" (emphasis in the original). *Id*. The use of the terms "shall" and "exclusively" when provided with the specific venue of the District of Hawaii provides the "mandatory or obligatory language" the Tenth Circuit requires to make Section 30 an enforceable, mandatory forum-selection clause. *K & V Scientific Co.*, 314 F.3d at 499–500. Therefore, once one of the parties to the lease decided to file a lawsuit in federal court instead of Barbadian or state courts, the lawsuit must proceed in the District of Hawaii.

Plaintiff claims the contractual provisions it agreed to and drafted are "extraordinary circumstances unrelated to the convenience of the parties" that justifies the setting aside of Section 30. *Atl. Marine Const. Co.*, 571 U.S. at 62. It is an argument that just doesn't fly. It is not the Court's role to reform an unambiguous forum-selection clause, freely agreed to, now that an agreeing party regrets its earlier agreement. If Plaintiff wanted mandatory jurisdiction and venue to be in this Court, it could have drafted the contract accordingly. Plaintiff chose not to.

14

Finally, although Defendants argued that this forum is too far and burdensome for them to litigate in, they have requested to have the case transferred to the District of Hawaii. This is certainly their right under Section 30 as written. Because both parties are bound to the words of their contract, and since Defendants have so moved, it is the decision of this Court to enforce Section 30 and transfer this case to the District of Hawaii.

## IV. Conclusion

For the reasons discussed above, the Court **DENIES** Defendants' motion to dismiss based on a lack of personal jurisdiction and **GRANTS** Defendants' motion to change venue to the District of Hawaii based on a mandatory forum selection provision in the relevant contract.

**IT IS SO ORDERED** on this 16th day of September 2021.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE